INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LO-
CAL NO. 399, Plaintiff-Appellant, v. CLETUS A. ZOLL, JR., Defendant-
Appellee.

Fourth District   No. 4—84—0660

Opinion filed August 22, 1985.

Michael W. O'Hara, of Cavanagh, Hosteny & O'Hara, of Springfield, for
appellant.

No brief filed for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, International Brotherhood of Electrical Workers
(I.B.E.W.), Local No. 399, filed a small claims complaint against
defendant Zoll, claiming an indebtedness of $637.80 for an assessment
made against him as a member of plaintiff. The action was filed on
July 5, 1984. On August 8, 1984, plaintiff filed a motion for summary
judgment. After bench trial on August 15, 1984, the court ruled that
the plaintiff had not met its burden of proof, inasmuch as (1) the as-
sessment resulted from a disciplinary hearing of which the defendant
had not received notice, and (2) plaintiff knew defendant had not re-
ceived the notice at the time the disciplinary hearing was conducted,
since the letter containing the notice had been sent by certified mail
and returned to plaintiff marked "refused." The court dismissed the

complaint. The plaintiff appeals from the judgment of the circuit court of Sangamon County.

The record indicates that on August 22, 1983, a written charge was preferred against the defendant within the union by Robert G. Wilson, Sr., a union member, alleging that defendant had been observed by Joe Brink, another union member, crossing a picket line and returning to work that date, in violation of article XXVII, section 1(17), of the union constitution; and that defendant had been two hours late for picket duty on August 21, 1983. On August 29, 1983, the union sent notice of the charges and a trial date of September 13, 1983; this notice, sent by certified mail, was returned to the union marked "refused." Nevertheless, the hearing was conducted in defendant's absence.

The record of the union disciplinary hearing shows that the chairman of the trial body stated:

"Also, show that Cletus A. Zoll was notified by certified letter of the charges pending against him, Certified Number 7436187, and this was returned to the Union office. Cletus A. Zoll refused to take receipt of the letter, and according to Article 27, Section 7, we will try him in absentia."

Article XXVII, section 2(7), of the union constitution provided:

"If the accused wilfully fails to stand trial—or attempts to evade trial—the trial board shall proceed to hear and determine the case just as though the accused were present." (I.B.E.W. Const., art. XXVII, sec. 2(7) (1983).)

As our decision herein turns on the lack of notice we need not discuss the fact that the union proceeded to hearing against defendant under that provision.

Article XXVII, section 1(17), of the union constitution, which defendant had been charged of violating, provided:

"Any member may be penalized for committing any one or more of the following offenses:

* * *

(17) Working for any individual or company declared in difficulty with a [local union] of the I.B.E.W., in accordance with this Constitution." (I.B.E.W. Const., art. XXVII, sec. 1(17) (1983).)

The record shows that Wilson appeared before the union trial board, and defendant did not. It is silent as to whether Brink was present for the disciplinary hearing. Wilson told the union trial board that defendant appeared to have worked for the picketed employer in 12-hour shifts on August 22 and 23, 1983. The trial board decided to as-

sess defendant an amount equal to the amount of time he worked during the strike plus costs, $637.80, to be paid to the local union office within 45 days; and further suspended him from attending local union meetings or participating in local union affairs until April 1, 1986, and suspended him from holding any local union office until September 13, 1988.

On October 20, 1983, the union advised defendant of the trial board's decision by certified letter, which was returned to the union office marked "refused." A letter of April 17, 1984, the union advised defendant that if the assessment were not paid, the union would initiate legal proceedings. These proceedings were subsequently initiated.

At hearing below, the defendant testified that several weeks into a strike, it was announced on national television that the strike had been settled between the union and operating companies throughout the nation. He said that on that Monday morning, he proceeded to his work location, saw no pickets indicating continuance of a strike, and went in to work. When he left work that evening he saw no pickets. On the following day, he saw no evidence of pickets and again went to work. Defendant testified that he had never seen the letter the union purportedly sent to him notifying him to appear before a trial board. He testified that he had not previously seen the letters or the envelopes which had been returned to the union office marked "refused," that the marking was not his handwriting, and that he did not know who had written it. He stated that as he had no knowledge of the trial board convening, he had not appealed the decision.

In argument below, the union contended that sending the letters by certified mail to the defendant at his last known address were sufficient, and, accordingly, the decision rendered, which was not appealed, should stand and be enforced. The court ruled that the plaintiff had not met its burden of proof, and dismissed the action, commenting that the evidence showed that the union had been aware that the defendant did not receive notice of the hearing, and no evidence had been presented to contradict that of defendant and indicate that he had known of the union disciplinary hearing. This appeal followed.

The defendant failed to file a timely brief in this court. His motion for leave to file the brief instanter was denied, and objections to the motion sustained, on February 14, 1985. His motion to reconsider and grant leave to file an appellee brief was denied on February 26, 1985. Therefore, this appeal will be decided under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131-32, 345 N.E.2d 493, 495.

Illinois courts have been called upon for judicial supervision and intervention in determining whether the voluntarily agreed to provisions of the bylaws and rules of such an organization were adhered to in resolving disagreements among its members. (See *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 396, 282 N.E.2d 728, 732-33, and cases cited therein (Underwood, J., dissenting).) Applying State common law, Illinois courts have recognized that strict adherence to judicial standards of due process would be arduous and might seriously impair the disciplinary proceedings of voluntary associations. However, one subjected to such disciplinary actions should be accorded a hearing before a fair and impartial tribunal, to avoid a denial of essential rights. See *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 394-95, 382 N.E.2d 728, 732, *cert. denied* (1972), 409 U.S. 1007, 34 L. Ed. 2d 300, 93 S. Ct. 438.

In *Werner v. International Association of Machinists* (1956), 11 Ill. App. 2d 258, 279-80, 137 N.E.2d 100, 111-12, the reviewing court discussed State court intervention in the disciplinary decisions of associations, stating:

> "[I]t is also equally well settled that courts will interfere with the decision of an association expelling one of its members if it appears that the rules of the association governing expulsion have not been observed or if the accused member has not been afforded those *rudimentary rights which will give him an opportunity to defend against the charges made*. These rights include notice to the accused of the charges made against him, and opportunity to be present and confront and cross-examine his accusers and an opportunity to make a defense and refute the evidence produced in support of the charges. (Carson v. Glass Bottle Blowers Ass'n of United States & Canada, 37 Cal. 2d 134, 231 P.2d 6, 21 A.L.R.2d 1387.)

> In Morgan v. Local 1150, United Electrical, Radio & Machine Workers of America, [1946], 331 Ill. App. 21, [72 N.E.2d 59 (abstract)], it was said that a labor union had inherent power to adopt a method of procedure for the trial and punishment of its members provided the method adopted was not in conflict with the letter or spirit of the constitution of the parent organization and was *in conformity with standards usually afforded for a fair trial*. The court went on to say that the essential requirements of such a trial are (a) that the nature of the offense be presented in writing to the union and to the member charged; (b) that the member be notified of the hearing; (c) that the member has the right to appear at the hearing and partici-

pate in the trial; and (d), that he have the right to appeal from any adverse decision." (Emphasis added.)

On appeal, plaintiff argues that the notice of charges and trial were sent to the defendant in accord with the union constitution. Article XXVII, section 2(4), states:

"Charges against members must be submitted to the [Recording Secretary] of the [Local Union] in whose jurisdiction the alleged act or acts took place within sixty (60) days of the time the charging party first became aware, or reasonably should have been aware, of the alleged act or acts. The charges shall be read but not discussed at the next regular meeting of the [Local Union] following the filing of the charges. *The [Recording Secretary] shall immediately send a copy of such charges to the accused member at his last known address together with written notice of the time and place he shall appear before the trial board.*" (Emphasis added.) (I.B.E.W. Const., art. XXVII, sec. 2(4) (1983).)

Plaintiff maintains that as it mailed such notice by certified mail, it provided the type of notice specifically mandated by the constitution, and the fine should be enforced. Plaintiff states, and the record shows, that both of the envelopes by which it sent defendant notice of (1) the trial date and charges, and (2) the trial board's decision, were clearly marked as originating from the union, and were returned to the union by the Post Office marked "refused." In support of its argument, plaintiff cites *UAW Local 756 v. Woychik* (1958), 5 Wis. 2d 528, 532, 93 N.W.2d 336, 338, wherein it was stated:

"A union member who knows he has failed to fulfill his picketing assignment cannot claim he did not receive any notice of the levying of a fine when he refused to accept delivery of a certified letter containing the notice, which envelope was plainly marked as coming from the union, and when *he refused to accept such notice when it was personally handed to him and [he] was personally told of the fine by a union representative.*" (Emphasis added.)

Plaintiff argues that under the reasoning in *Woychik,* defendant cannot expect to avoid the imposition of the assessed fine by refusing two notices pertaining to it which were sent to him in envelopes clearly marked as originating from the union.

We disagree and find *Woychik* distinguishable. In *Woychik,* the union constitution provided that local unions could levy fines for reasons properly adopted by the local, providing the fines did not exceed $1, and in certain circumstances that the local could provide for forfeiture

of membership of a delinquent member for nonpayment thereof without the necessity of proceeding by the filing of charges and the conduct of a trial. Prior to a strike, the local union adopted a motion providing for $1 fine for each picketing assignment missed. In accordance, a $9 fine was assessed against defendant *Woychik*, who did not pay it. The bylaws of the union provided for a reinstatement fee of $8 for any member who became delinquent, and the union brought an action in State court for $17, to collect fines which it had imposed for the alleged failure of Woychik to picket during a strike. One of the arguments raised by defendant Woychik was that the fine could only be imposed by the union by filing charges and the conduct of a trial. The *Woychik* court found there was no dispute over the application of the fine by the defendant, but that he objected that he was never notified of the fine or of its application to him prior to the suit. The reviewing court found there was credible evidence to sustain the trial court in finding that defendant *had known* of the fine for his failure to picket, and that such knowledge was apparent from his own testimony. The refusal to accept delivery of a certified letter containing such notice, in an envelope plainly marked as coming from the union, was not the only fact supporting the defendant's notice of the levying of a fine.

■■ ■ Upon review of the authorities and the facts herein, we conclude that although the constitutional provision in question states only that a copy of the charges and written notice of the time and place he is to appear before the union trial board *shall be sent* to the accused member at his last known address; we conclude that, in order to enforce a disciplinary fine in court, under State law "notice" of disciplinary proceedings requires more than merely performing the ministerial act of "sending" such notice. We concur with the trial court that this record contains no evidence that the defendant had knowledge of either of the charges, the trial date, or the trial decision, prior to the filing of this lawsuit. Accordingly, we affirm.

Affirmed.

GREEN, P.J., and WEBBER, J., concur.