SHEET METAL WORKERS LOCAL UNION No. 218, Plaintiff-Appellant,
v. TIMOTHY MASSIE, Defendant-Appellee.

Fourth District   No. 4—93—0535

Argued November 15, 1993.—Opinion filed December 30, 1993.

Patrick J. O'Hara (argued), of Springfield, for appellant.

Frederic K. Kenney (argued), of Winters, Prince, Featherstun, Johnson & Gaumer, of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1993, plaintiff, Sheet Metal Workers Local Union No. 218 (the Union), sued defendant, Timothy I. Massie, seeking a money judgment totaling $1,350, the amount of a fine assessed against him by the Union hearing board for an alleged violation of the Union constitution. Following a bench trial, the trial court held that the Union hearing board's finding that defendant violated the Union constitution was against the evidence and, accordingly, entered judgment in favor of defendant. Plaintiff appeals, arguing the court exceeded the appropriate scope of review.

We agree and reverse.

## I. BACKGROUND

The record indicates that, at all relevant times, defendant was a member of the Union and the Union's organization and affairs were governed by the "Constitution & Ritual of the Sheet Metal Workers' International Association and Affiliated Local Unions, State, District and Provincial Councils" (constitution). In September 1992, Robert Champion, the Union's business agent, filed a written charge against defendant, alleging that he had violated article 17, section 1(g), of the constitution by accepting employment with Kelly Construction, Inc. (Kelly), a nonunion company. Article 17, section 1(g), prohibits Union members from doing any of the following:

> "Accepting employment in any shop or on any job where a strike or lockout, as recognized under this Constitution, exists, or *performing any work covered by the claimed jurisdiction of this Association for any employer that is not signatory to or bound by a collective[-]bargaining agreement with an affiliated local union of this International Association, unless authorized by the local union.*" (Emphasis added.)

In October 1992, the Union hearing board convened to consider Champion's charge against defendant. No verbatim transcript of the hearing was made. However, minutes of the meeting were taken,

which indicate that Champion testified "that on September 9, 1992, [defendant] came into his office and informed [him] that [defendant] had gone to work for Kelly. At this time, [he] told [defendant] he would give [him] until the following Monday to quit Kelly's or [he] would be forced to file charges against [defendant]." According to the minutes, Bob Clow also testified "that he had seen [defendant] working for Kelly at A.E. Staley [Manufacturing Company]." Defendant testified at the hearing, and the minutes reflect "that he called Bob Champion several times and asked him about a job. He said he had told [Champion] that he was in a pinch and couldn't wait for a job any longer, so he went to work for Kelly." Based on this evidence, the Union hearing board found defendant had violated article 17, section 1(g), as alleged, and fined him $2,700, with half of this amount to be suspended. Under the constitution's provisions, defendant had a right to appeal the hearing board's decision within the Union structure, but no appeal was taken.

The Union demanded that defendant pay the assessment, but he failed to do so. As a result, in January 1993, the Union brought a complaint in the circuit court of Macon County to enforce the fine assessed against defendant in the amount of $1,350.

The trial court conducted a hearing at which Champion testified that Kelly was a nonunion shop, and the basis for the charge against defendant was that he worked for Kelly. He stated that a Union member could resign from the Union by formally tendering his written resignation and then accept employment at a nonunion shop without being charged. In the present case, however, defendant had not resigned.

Champion further testified that a person could work for Kelly and not do sheet-metal work, and his only knowledge that defendant did sheet-metal work was based on his conversation with defendant. He also agreed that one could only violate the cited constitutional provision by working for Kelly and doing work covered by the jurisdiction of the sheet-metal workers. He testified, however, that if defendant applied "any mathematical skills in laying out or any skills over how to use the hand tools or electrical tools," then he would be using skills learned in his trade, which would then come within the jurisdiction of the sheet-metal workers.

Champion also testified that the sheet-metal workers' jurisdiction would cover about all the work performed in a bean mill such as Staley. He acknowledged that the minutes of the Union hearing did not contain any testimony that defendant had performed any sheet-metal work for Kelly, but asserted that "there was [sic] discussions

between [defendant] and the [Union hearing] board as far as the type of work he was doing would not violate the [c]onstitution and he was corrected. [It was pointed out to him] that when he uses his layout skills and stuff, that's in violation of the [c]onstitution." However, Champion stated that at the Union hearing, neither he nor Clow testified that defendant did sheet-metal work. He explained that the sheet-metal industry basically erects, installs, and dismantles anything that it may build in a shop or the field.

Eddie O'Connor, business manager and financial secretary for the Union, testified that defendant paid his Union dues for August 1992. He explained that a 60-day grace period existed during which a member is still in good standing after becoming past due. He indicated that defendant was suspended in November 1992, but another 60-day grace period existed during which a suspended member could reinstate prior to being dropped from the Union. O'Connor further stated that although defendant did not reinstate, he never sent the Union any written resignation.

John Aeillo, the president of the Union, testified in court that he was the chairman of the Union's hearing board at defendant's hearing. Aeillo indicated that at the hearing, Champion testified that defendant had said that he had gone to work for Kelly, and Clow testified that he saw defendant working at Staley on some "system." Aeillo also stated that the minutes of the Union hearing were an accurate and complete statement of the testimony. He also stated that he decided defendant had breached the constitution based on the "witnesses' statements that [defendant was seen] working on an object."

Bruce Stephens, supervisor at Kelly Construction, described defendant's work for Kelly at Staley as "raising a liquid soy tank that contained soy sauce and *** run[ning] the liquid lines, redoing the liquid lines." He further testified that defendant's work was not sheet-metal work because the handling of liquid lines fell within the jurisdiction of the plumbers and pipefitters. He noted that the liquid lines for the soy tank, as well as the soy tank itself, were fiberglass. However, one line was a caustic line, which carried a chemical used in the manufacturing process, and was metal. He described Kelly as "a fabricating company," but also a "field installation company." It was considered a "general contractor in the field." Therefore, it did both sheet-metal work and nonsheet-metal work. He explained that what a line carries determines the jurisdiction of the work. Because the work in the present case involved liquid lines, it belonged under the jurisdiction of plumbers and pipefitters. He further testified that defend-

ant only worked on the fiberglass lines, and the other people on the crew were not sheet-metal workers.

Defendant testified that he had been out of work for several months and approached Champion regarding his financial situation and need for a job. Defendant asserted that Champion told him to do whatever he wanted, just not to go nonunion. Because defendant could not find a Union job, he went to work for Kelly. After his first shift at Kelly, he told Champion that he had begun working at Kelly. From that date through the date of the complaint, he worked for Kelly at Staley and limited his work to fiberglass or plastic tubes. He stated that in his 13 years as a sheet-metal worker, he had never done any fiberglass work. He further testified that he did not do any work for Kelly similar to the work he did as a sheet-metal worker.

Defendant also testified that at the Union hearing, Clow only stated that he saw defendant at Staley wearing a green Kelly hard hat. Defendant asserted that he asked Clow whether he saw him doing any sheet-metal work, and Clow responded that he did not say that, only that he saw defendant wearing a Kelly hard hat. Defendant also claimed he did not do any sheet-metal work on the project. He testified that his work consisted of cutting, readjusting, and reconditioning the fiberglass lines.

Fred Paxton, a member of the Union, testified as a rebuttal witness that in his capacity as a business agent for the Union, he had worked with the jurisdictional standards of sheet-metal workers. He asserted, based on the description of defendant's work, that in "most cases it would fall under the realm of pipefitters." However, he testified that as a sheet-metal worker and a steward "in the jurisdictional battle between and among crafts," he had also worked on a similar system. He indicated that this type of work had been done in the past by the sheet-metal workers and claimed by them. He further stated that in certain circumstances, the jurisdiction of the work depended on the product carried inside the line, but in other circumstances, it did not. As a sheet-metal worker, he testified that he had worked on a lot of "wet systems."

The trial court found that the evidence taken as a whole showed the findings of the Union hearing board were against the evidence. The court concluded that it had a duty to see that defendant was afforded due process. Consequently, the court entered judgment in favor of defendant, and the Union appeals.

## II. SCOPE OF REVIEW

Defendant was fined pursuant to article 17, section 1(a), of the constitution, which provided as follows:

"Except as otherwise provided in this Constitution, after trial and conviction of any of the offenses described in this Article, any officer or member of this Association may be disciplined by imposition of one [or] more of the following penalties: reprimand, *fine*, removal from office, suspension or expulsion from membership, or other appropriate disciplinary measures." (Emphasis added.)

The constitution further provided that if fines were not paid "collection thereof in the United States shall be effected by the financial secretary-treasurer of the local union which imposed the fine by suit in any court of competent jurisdiction."

■ At the outset, we note that the United States Supreme Court has recognized that a union's disciplinary power extends to the assessment of reasonable fines against a member, and the collection of such fines may be pursued in State court. (*NLRB v. Allis-Chalmers Manufacturing Co.* (1967), 388 U.S. 175, 191-94, 18 L. Ed. 2d 1123, 1134-35, 87 S. Ct. 2001, 2012-14; see also *Independent Lift Truck Builders Union v. Reese* (1988), 169 Ill. App. 3d 422, 423, 523 N.E.2d 653, 653-54; *Local 165, International Brotherhood of Electrical Workers v. Bradley* (1986), 149 Ill. App. 3d 193, 199, 499 N.E.2d 577, 581.) While State courts are traditionally reluctant to intervene in the internal affairs of unions (see *Bradley*, 149 Ill. App. 3d at 209-10, 499 N.E.2d at 588 (and cases cited therein)), Illinois courts have recognized their power to consider the basic fairness of disciplinary actions by voluntary unincorporated associations. (See *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 394-95, 282 N.E.2d 728, 732; *International Brotherhood of Electrical Workers, Local No. 399 v. Zoll* (1985), 135 Ill. App. 3d 910, 913-14, 482 N.E.2d 446, 448-49 (79 A.L.R.4th 933, 937-38 (1990)); *Bradley*, 149 Ill. App. 3d at 210, 499 N.E.2d at 588; *Reese*, 169 Ill. App. 3d at 424-25, 523 N.E.2d at 654-55; *Local 336, International Brotherhood of Electrical Workers v. Detorrice* (1986), 151 Ill. App. 3d 608, 613-15, 502 N.E.2d 1299, 1302-04.) As the Supreme Court of Illinois has recognized, strict adherence to judicial standards of due process would be arduous and might seriously impair the disciplinary proceedings of voluntary associations. However, an individual subjected to such disciplinary action should be accorded a hearing before a fair and impartial tribunal, and to hold otherwise would be a denial of essential rights. (*Van Daele*, 51 Ill. 2d at 394-95,

282 N.E.2d at 732.) Moreover, this court in *Zoll*, quoting *Werner v. International Association of Machinists* (1956), 11 Ill. App. 2d 258, 279-80, 137 N.E.2d 100, 111-12, wrote the following:

" '[I]t is also equally well settled that courts will interfere with the decision of an association expelling one of its members if it appears that the rules of the association governing expulsion have not been observed or if the accused member has not been afforded those *rudimentary rights which will give him an opportunity to defend against the charges made*. These rights include notice to the accused of the charges made against him, and opportunity to be present and confront and cross-examine his accusers and an opportunity to make a defense and refute the evidence produced in support of the charges. [Citation.]

In *Morgan v. Local 1150, United Electrical, Radio & Machine Workers of America* [1946]. 331 Ill. App. 21 [72 N.E.2d 59 (abstract)], it was said that a labor union had inherent power to adopt a method of procedure for the trial and punishment of its members provided the method adopted was not in conflict with the letter or spirit of the constitution of the parent organization and was *in conformity with standards usually afforded for a fair trial.* The court went on to say that the essential requirements of such a trial are (a) that the nature of the offense be presented in writing to the union and to the member charged; (b) that the member be notified of the hearing; (c) that the member has the right to appear at the hearing and participate in the trial; and (d), that he have the right to appeal from any adverse decision.' (Emphasis added.)" *Zoll*, 135 Ill. App. 3d at 913-14, 482 N.E.2d at 449.

■ Further, section 411(a)(5) of the Federal Labor-Management Reporting and Disclosure Act of 1959 provides:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing." 29 U.S.C. §411(a)(5) (1988).

The United States Supreme Court has held that this guarantee requires the "charging party to provide *some evidence* at the disciplinary hearing to support the charges made." (Emphasis added.) (*International Brotherhood of Boilermakers v. Hardeman* (1971), 401 U.S. 233, 246, 28 L. Ed. 2d 10, 21, 91 S. Ct. 609, 617; see generally

Annot., *Procedural Rights of Union Members in Union Disciplinary Proceedings—Modern State Cases*, 79 A.L.R.4th 941, 1002-09 (1990).) The Court rejected a stricter standard because it would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record. *Hardeman*, 401 U.S. at 246, 28 L. Ed. 2d at 22, 91 S. Ct. at 617.

## III. ANALYSIS

On appeal, the Union argues that the trial court exceeded the appropriate scope of review when it found the Union hearing board's findings against the evidence. The Union maintains that the only function of the court was to review the evidence of the hearing board to determine whether *some* or *any* evidence existed to support its findings, and the court was not at liberty to consider evidence not presented at the Union hearing. Because evidence was presented that the Union claimed jurisdiction over the work performed by defendant, the Union argues that sufficient evidence existed to support a finding that defendant's conduct was a violation of its constitution. Thus, the Union concludes that the court exceeded the proper scope of review by finding to the contrary.

Conversely, defendant argues that the trial court applied the appropriate scope of review in the Union's enforcement action. He asserts that the court properly determined whether he had been afforded due process at the Union level, and that the court correctly found that the disciplinary proceeding failed to satisfy the requirements of due process. Defendant cites six specific arguments supporting his claim that he was denied due process: (1) the Union failed to present evidence to support the charge; (2) the Union hearing board was not impartial; (3) the Union proceeding did not involve a full and fair presentation of evidence and was not characterized by an atmosphere of fairness; (4) the hearing board had previously ruled on like charges against other members; (5) the hearing board considered the charges outside the disciplinary hearing and formed opinions before the hearing; and (6) the fine imposed was arbitrary.

The major issue presented here is whether sufficient evidence was presented at the Union disciplinary hearing to support a finding that defendant violated article 17, section 1(g), of the constitution by accepting employment with Kelly. As previously noted, the scope of judicial review on this issue is very limited:

"[U]nion members [are guaranteed] a 'full and fair' disciplinary hearing, and the parties and the lower [F]ederal courts are in

full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of judicial review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process[ ] [citations]; and we feel that [it] may fairly be said to import a similar requirement into union disciplinary proceedings." *Hardeman*, 401 U.S. at 246, 28 L. Ed. 2d at 21, 91 S. Ct. at 617.

The record before the trial court showed that in September 1992, Champion initiated the Union disciplinary proceeding against defendant by charging him with violating article 17, section 1(g), of the constitution, by "accepting employment with Kelly Construction, Inc." Article 17, section 1(g), is violated by "performing any work covered by the claimed jurisdiction of [the Union]" with a nonsignatory business. Thus, performing work for a nonunion company not covered by the Union's jurisdiction does not constitute a violation of that section. The record before the court also showed that the Union disciplinary hearing was informal, but minutes were taken summarizing the testimony. We find that a presumption of regularity attaches to the Union proceedings. Unless the record affirmatively rebuts that presumption, it stands.

■ Nothing in the minutes of the Union disciplinary proceeding rebuts this presumption. Defendant attacks the hearing board's decision by relying on *new* evidence presented to the trial court that the work he performed was not covered work. However, the Supreme Court's decision in *Hardeman* indicates that the correct standard for judicial review of disciplinary cases is whether the Union presented "some evidence *at the disciplinary hearing* to support the charges made." (Emphasis added.) (*Hardeman*, 401 U.S. at 246, 28 L. Ed. 2d at 21, 91 S. Ct. at 617.) That standard does not permit *de novo* review, and the trial court should have disregarded all evidence not presented at the disciplinary hearing.

We acknowledge that some commentators indicate that State courts should go beyond this limited review by taking additional testimony and reweighing all the evidence, in part because frequently no adequate record of the union proceedings is available. (Summers, *The Law of Union Discipline: What the Courts do in Fact*, 70 Yale L.J. 175, 185-86 (1960).)

"Attempts to reconstruct the testimony inevitably lead to hopeless confusion, and the court must hear the evidence *de novo*. Although the court, after hearing the evidence *de novo* might conceivably apply a substantial evidence rule, there is little in-

centive and less reason for giving weight to the union's findings when the court has heard all of the evidence [firsthand] and [cannot] know what evidence was heard by the union tribunal." Summers, *The Law of Union Discipline: What the Courts do in Fact*, 70 Yale L.J. 175, 186 (1960).

See also Summers, *Legal Limitations on Union Discipline*, 64 Harv. L. Rev. 1049, 1084-86 (1951); T. Keeline, NLRB and Judicial Control of Union Discipline 93 (1976) (Report No. 13, Labor Relations and Public Policy Series, Publication of the Industrial Research Unit of the Wharton School, University of Pennsylvania).

However, we find these authorities unpersuasive and adhere to our view that a union disciplinary proceeding, like that in the present case, is not subject to *de novo* review. Clearly, "some evidence" was presented at the disciplinary hearing to support the Union hearing board's sanction. The Union should be able to rely on the agreed-upon contractual constitutional provisions, and in the absence of evidence to rebut a presumption of regularity of the proceedings, courts should not disturb the hearing board's ruling. As stated above, this record did not rebut the presumption of regularity. If defendant wanted to complain with greater specificity, he should have—and could have—made a complete transcript of the proceeding; lacking that, he should have appealed as provided within the Union constitution.

Regarding the errors defendant recites in attacking the fine imposed as a result of the Union disciplinary hearing, we have considered all of these matters carefully and conclude that none of these alleged errors deprived him of a fair hearing.

## IV. CONCLUSION

For the reasons stated, we reverse the order of the circuit court.

Reversed.

KNECHT and COOK, JJ., concur.