**James Dean FOLEY, Plaintiff,**

v.

**PLUMBERS & STEAMFITTERS LOCAL # 149 Defendant.**

No. 00–2108.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

July 19, 2000.

James Dean Foley, Oakwood, IL, pro se.

William K. Cavanagh, Cavanagh & O'Hara, Springfield, IL, Francis J. Martorana, Sally M. Tedrow, O'Donoghue & O'Donoghue, Washington, DC, for Defendant.

## ORDER

McCUSKEY, District Judge.

On June 6, 2000, Defendant, Plumbers & Steamfitters Local # 149, filed a Motion for Summary Judgment (# 7). The motion is in response to a complaint filed by Plaintiff, James Dean Foley, that Local 149 had violated several sections of the Labor Management Reporting and Disclosure Act and the Mail Fraud statute. Fol-lowing careful consideration of the arguments of the parties and the documents filed, this Court concludes that Local 149 is entitled to summary judgment. There are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment (# 7) is GRANTED.

## FACTS

Plaintiff, James Dean Foley, is a member in good standing with Local 157—a labor organization chartered with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("UA"). Defendant, Local 149, is also affiliated with the UA. Each of these unions has a geographic jurisdiction in which to represent members of the union. Local 149's jurisdiction is several counties in east-central Illinois. Each local union has a collective bargaining relationship with employers in their jurisdiction that provides the opportunity for work in the plumbing and pipefitting trade. The UA and the local unions are governed by the UA constitution. The UA constitution covers a process where a member of one local union travels to the geographic jurisdiction of another local union and deposits a travel card in order to be referred for work. As part of that process, Local 149 administers an out-of work list pursuant to which it refers individuals for employment. Local 149 members who are out of work may sign that list and members of other local unions can also sign the out-of-work list if they follow the travel card provisions in the UA Constitution.

On August 18, 1999, Foley deposited his travel card with Local 149 and signed the out-of work list. Then, Larry Swope, Local 149's business manager, contacted Local 157's business manager to confirm that Foley was unemployed. However, at the time, Foley was working at Meccon Industries, an employer in Local 157's jurisdic-

tion. As a result, Swope filed internal charges against Foley for a violation of the travel card rules. On September 27, 1999, and again on September 29, 1999, Swope sent written specific notification of the charges and hearing date via certified mail to the address Foley had provided, a Post Office box. A few days before the hearing, the envelopes were returned to Local 149 each showing several attempted delivery dates and marked "unclaimed." Foley denies receiving the notices or having any knowledge of the charges. Consequently, he did not attend the hearing on October 27, 1999. At the hearing, Swope presented the evidence of the violation to the Executive Board. The Board found Foley guilty and charged him $500.

On November 11, 1999, Swope sent a letter to Thomas Patchell, the General Secretary–Treasurer of the UA, notifying him of the charges and fine against Foley. A copy of the letter was sent to Foley by certified mail but again was returned to Local 149 stamped "refused." On December 2, 1999, Foley learned of the charges and fine by Local 149 through correspondence with Patchell. On January 4, 2000, Foley appealed the $500 fine to the UA arguing that he had not been properly served, did not receive a fair and full trial, and had not violated the travel card provision of the UA constitution. The UA affirmed Local 149's actions on April 14, 2000, in a letter to Foley. On April 24, 2000, Foley filed a complaint against Local 149 in Federal Court requesting injunctive relief for any and all fines illegally levied against him. On May 25, this court denied Plaintiff's Motion for an Emergency Hearing and Temporary Restraining Order. On June 6, 2000, Defendant filed a Motion for Summary Judgment (# 7).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Schmidt v. Runyon*, 20 F.Supp.2d 1246, 1248 (C.D.Ill.1998). "Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial." *Schmidt*, 20 F.Supp.2d at 1248. *See also, Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 394 (7th Cir.1998). In other words, summary judgment is appropriate and even required if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

█ This court first notes that ruling on Defendant's Motion for Summary Judgment has been complicated by Foley's failure to comply with the Central District of Illinois' Local Rules. Local Rule 7.1(D)(2) requires that a party opposing summary judgment submit a response to the allegedly undisputed material facts that responds by number to each of the movant's undisputed facts. Further, Local Rule 7.1(D)(2)(b)(2) provides:

List by number each fact from Section B of the motion for summary judgment which is claimed to be disputed. Any document, affidavit or excerpts of transcript claimed to establish an issue of fact must be referenced by page and attached as an exhibit.

Foley filed a Statement of Undisputed Facts with his Reply to Defendants' Motion for Summary Judgment that does not comply with Local Rule 7.1(D)(2). Foley did not specifically admit or deny the allegations and did not support many of the statements with affidavits or exhibits. The party opposing summary judgment may not rely on the allegations of his pleadings to deny material facts that the movant supported with affidavits or exhibits. "The burden on the non-movant is not onerous," but the response must set forth specific facts showing that there is a genuine issue for trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

■ Failing to submit an appropriate response to a statement of undisputed facts allows the court to assume that the facts stipulated by the moving party exist without controversy. *Waldridge*, 24 F.3d at 922. The purpose of the strict following of the rule is to prevent the court from having to sort through the facts looking for factual disputes. *Waldridge*, 24 F.3d at 922. Strict enforcement of the local rules does not mean that a party's failure to comply with the rules automatically results in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir.1995). However, in this case, unsupported statements will not be considered as evidence contradicting the defendant's statements.

Foley's complaint sets forth three claims. In the first claim, Foley argues that Local 149 unjustly brought disciplinary action against him because of disputes he had with Local 157. Secondly, he claims that he was not properly served with written specific charges and thus was denied a fair and full hearing in violation of Section 101(a)(5) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA")—29 U.S.C. § 411. Finally, in his third claim, Foley argues that Local 149 violated the Mail Fraud Act (18 U.S.C. § 1341) by using the post office to send correspondence to the UA in a deliberate scheme to defraud him. 29 U.S.C. § 412 allows any member of a labor organization whose rights have been infringed upon to file a civil action in federal court. Before reaching the courts, members are often required to exhaust the issue within the internal proceedings of the union. However, the exhaustion provision is not mandatory, and the ultimate decision is in the sound discretion of the courts. *Kowaleviocz v. Local 333*, 942 F.2d 285 (4th Cir. 1991). Here, Foley appealed his fine to the UA, and the appeal was denied. Thus, he has exhausted all remedies within the union.

## II. Count I

■ Foley first claims that the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 529, prohibits the disciplinary action that was taken against him. Specifically, Foley claims that Local 149 brought a disciplinary action against him in an arbitrary, capricious, excessive and oppressive manner because of conflicts he was having with Local 157. Under the LMRDA, a union is barred from disciplining a union member for exercising his rights pursuant to the statute. 29 U.S.C. § 529 (West 1998). Further, a union is required to provide a full and fair hearing before imposing any disciplinary measures on a member. 29 U.S.C. § 411(a)(5)(c) (West 1998). The purpose of the LMRDA is not to prohibit union discipline but to prevent improperly motivated and conducted disciplinary proceedings. *Rosario v. Amalgamated Ladies' Garment Cutters' Union Local 10*, 605 F.2d 1228, 1239 (2nd Cir.1979). Moreover, the court's role is not to interpret the rules, regulations, or constitution of the union but to determine if the person received a full and fair hearing. *Curtis v.*

*Int'l Alliance of Theatrical Stage Employees and Moving Picture Machine Operators Local No. 125,* 687 F.2d 1024, 1029 (7th Cir.1982). Nothing in Section 101(a)(5) allows for the courts to substitute judicial for union authority "to determine the scope of offenses warranting discipline of union members." *International Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 242, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). *See also English v. Cowell,* 969 F.2d 465, 471 (7th Cir.1992) (LMRDA is not a license for judicial interference in the internal affairs of the union); *Maher v. International Bhd. of Elec. Workers,* 15 F.3d 711, 714 (7th Cir.1994) (court must defer to the union's interpretation of its own constitution so long as the interpretation is reasonable); *Howard v. Weathers,* 139 F.3d 553, 557 (7th Cir.1998) (implied provisions of a union constitution must be a reasonable interpretation). "Conviction based on charges unsupported by any evidence is a denial of due process." *Hardeman,* 401 U.S. at 246, 91 S.Ct. 609. Thus, the standard of judicial review to guarantee a full and fair disciplinary hearing requires only that the charging party provide some evidence at the disciplinary hearing to support the charges made. *Hardeman,* 401 U.S. at 246, 91 S.Ct. 609; *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1223 (7th Cir.1985).

Accordingly, to be granted summary judgment, Local 149 must show that there is some evidence that Foley violated the UA constitution and thus, the fine is reasonable. Local 149 has provided evidence that depositing a travel card while being employed in another jurisdiction is a violation of the UA constitution and that Foley was working for a Local 157 employer when he deposited his travel card with Local 149.

■ A copy of the UA constitution provided with the Local 149's motion explains the purpose and use of the travel card. Although the constitution does not explicitly state that a union member must be unemployed to deposit a travel card, the

union is entitled to their own interpretation as long as it is reasonable. Larry Swope, the business manager for Local 149, has provided a signed declaration testifying to the practice and interpretation of the travel card provision. Foley challenges Swope's interpretation of the travel card provision. He states that he has utilized travel cards many times, however, does not specify how he has used the travel card. Further, Foley provides no evidence contradicting the interpretation of the travel card provision such as affidavits of other union members or officers. "Courts should respect the autonomy of the union in determining punishable offenses and in disciplining members." *Goodman v. Laborers' International Union,* 742 F.2d 780, 783 (3rd Cir.1984). Foley states that the Local union rules cannot be in conflict with the UA Constitution and that Local 149's practice of allowing only unemployed members to deposit a travel card conflicts with the UA constitutional provision that requires union representatives to accept the travel cards. However, the court does not agree with Foley that Swope's interpretation conflicts with the UA Constitution. Accordingly, this court must defer to the interpretation by the union. In fact, Local 149's interpretation of the travel card provision is reasonable and can be easily inferred because of the nature and purpose of travel cards. Further, Local 149's interpretation of the travel card rules was affirmed by the International Union when it upheld the charges.

■ Local 149 and Foley agree that Foley deposited his travel card with Local 149 on August 18, 1999. As standard procedure Swope contacted Foley's local union to verify his status and then learned that Foley was currently employed with a Local 157 employer. The record shows that Foley was employed with Meccon Industries from July 21, 1999 until September 17, 1999. With the UA constitution, Swope's declaration, and a fax from Meccon Industries, Defendant has provided

"some evidence" to support the charges against Foley.

Foley's allegations that Local 149 imposed arbitrary disciplinary actions against him because of his conflicts with Local 157 are not supported. In *Frye v. United Steelworkers of America*, the court stated:

> While a history of conflict and animosity between a member of a union and its governing body may set the stage for harsh or improper treatment of that member, charges that bias undermined the fairness of a disciplinary proceeding must be supported by specific factual allegations from which the operation of bias can be inferred.

767 F.2d 1216, 1223 (7th Cir.1985). Foley's allegation that the business managers of Local 149 and Local 157 were seen conversing is not sufficient to support his theory of retaliation. Further, Foley infers that because he had been corresponding with the United Association International Office in Washington D.C. regarding his appeals for Local 157 he was not afforded a fair appeal by the UA in Local 149's charge. However, the UA is not a party to this suit. In addition, there is no evidence that Local 149 was aware of the conflicts Foley had with Local 157. Consequently, no genuine issue of fact exists because evidence shows that Local 149 reasonably interpreted the travel card provision and that evidence was presented at the hearing that Foley violated that provision. Accordingly, summary judgment is granted on Count I.

### III. Count II

■ In the second claim Foley argues that he was not afforded a full and fair hearing because he was not properly served. He further asserts that Local 149's use of certified mail was insufficient service and that personal service was required. Both Foley and Local 149 argued extensively whether or not Foley purposefully evaded service by not claiming the certified letter from the post office. However, this point is not at issue here. The question of law that remains is whether Local 149's use of certified mail to serve Foley with notice of the charges constituted proper service. The purpose of LMRDA is to protect union members from improper discipline by ensuring that the standards of due process apply to union disciplinary proceedings. *English*, 969 F.2d at 469. LMRDA provides that before a union member is disciplined by a labor organization he shall be served with written specific charges, given adequate time to prepare a defense, and granted a full and fair hearing. 28 U.S.C. 411(a)(5). In court proceedings, proper service of process is notification "by means which are reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Local rules often govern districts and states as to what type of service constitutes proper service. What qualifies as proper service of charges of a union member by a labor organization is not clearly defined.

The Seventh Circuit has not ruled as to whether certified mail is an acceptable method of notification for a union without violating a member's due process. A few state courts have held that the use of certified mail by a union was not proper service. *International Bhd. of Electrical Workers v. Zoll*, 135 Ill.App.3d 910, 90 Ill.Dec. 627, 482 N.E.2d 446, (1985) (certified mail not proper notification because union member had no knowledge of the notice); *International Bhd. of Electrical Workers v. Mitchell*, 98 Wash.App. 700, 990 P.2d 998 (2000) (certified mail not acceptable service because persuaded that service of a union's disciplinary complaint in Washington must comport with procedural due process requirements for service of process in a court case). However, a union is not required to follow the same strict procedures as in Federal and state courts. *Eisman v. Baltimore*, 352 F.Supp. 429, 435 (D.Md.1972). Moreover, a few

federal districts have held that certified mail is acceptable service as long as the union uses the best method available to ensure actual notice. *Reilly v. Sheet Metal Workers'*, 488 F.Supp. 1121, 1126 (S.D.N.Y.1980) (service of charges by certified mail would have been acceptable except union used incorrect address); *Meader v. District Lodge No.4*, 786 F.Supp. 95, 104 (D.Me.1992) (certified mail acceptable when union tried to serve members by certified letter but members intentionally avoided the receipt of the letters). Requiring personal service in all circumstances of union disciplinary procedures is not necessary and would place an undue burden on unions especially when serving members of different Local unions—such as travelers.

■ Local 149 used the best method, certified mail, to ensure proper service. The union used the address provided by Foley as his correct address—a P.O. Box. "A union member is responsible for providing an address or way of notification to ensure contact." *Reilly*, 488 F.Supp. at 1126. Foley does not claim that he has had trouble getting mail at this address or that the address and method were not reasonably likely to reach him. In fact, Foley states that he "routinely accepts any and all mail with an identifiable sender's name or address" at that address. Foley also argues that he could have easily been served in Tuscola where he was working. However, Foley was laid off from this job on September 17, 1999—before Local 149 tried to serve Foley by certified mail. Further, since Foley had given a post office box for his address and was not a member of Local 149, Local 149 did not know where to physically locate Foley. Foley argues that Local 149 could have phoned him. However, a phone call by itself would not constitute proper written notification of the charges. Moreover, Local 149 received two envelopes back "unclaimed" which indicated to them that the mail had found its way to Foley's Post Office but that Foley denied acceptance. A phone call would not guarantee that written notification would be claimed. Therefore, Local 149 used the best method available to ensure notification—certified mail to Foley's known Post Office box.

Defendant has provided sufficient evidence that it attempted to serve Foley by certified mail. Defendant has provided copies of the certified mail envelopes sent and returned "unclaimed," receipts of sending the letters certified mail, copies of the letters enclosed, a declaration by Tonya Wood that the envelopes were not tampered with, information regarding the Post Office's regulations, and a declaration from Larry Swope that letters with notification of the charges were sent certified mail to Foley. Foley on the other hand does nothing to dispute this evidence but question the authenticity of the certified mail envelopes. The record shows that Local 149 mailed two letters on September 27, 1999, and September 29, 1999, to Foley's P.O. Box notifying him of the charges being brought. Tonya Wood testified in the declaration that she placed the letter in the envelope and sent it certified mail. She further attests to the date on the September 27, 1999, letter.

Foley's claim that the envelopes had been tampered with are unfounded. On the September 27, 1999, envelope, the return to sender stamp is in fact over the certified mail seal showing that it was returned to Local 149 after being certified, and the bar coding strips at the bottom of the envelopes are an internal Post Office routing mechanism and have no bearing on the authenticity of the envelopes. Self-serving assertions, which have no factual support in the record, are not sufficient to defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir.1998). Consequently, Foley has presented no evidence to present a question of fact as to whether Local 149 attempted to serve Foley by certified mail. Defendant has met its burden of proof for summary judgment on Count II and Foley has not provided evidence that demonstrates a question of fact exists. Accord-

ingly, as a matter of law, Local 149 is entitled to summary judgment on Count II.

## IV. Count III

■ Foley's third claim is that the Local 149 utilized the United States Post Office in a scheme to defraud Foley violating 18 U.S.C. § 1341, the Federal Mail Fraud and Lottery statute. However, there is no private action available under 18 U.S.C. § 1341 and courts have uniformly held that an implied private right of action cannot be maintained under the mail fraud statute. *Bajorat v. Columbia–Breckenridge Development Corp.*, 944 F.Supp. 1371, 1378 (N.D.Ill.1996); *Bell v. Health–Mor, Inc.* 549 F.2d 342, 346 (5th Cir.1977). Accordingly, summary judgment is granted on Count III for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (# 7) is GRANTED and judgment is entered in favor of Defendant and against Foley.