Sheldon DEBS, Plaintiff–Appellant,

v.

NORTHEASTERN ILLINOIS UNIVERSITY and Board of Governors of State Colleges and Universities, Defendants–Appellees.

No. 97–3665.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1998.

Decided Aug. 6, 1998.

Arthur R. Ehrlich (argued), Jonathan C. Goldman, Chicago, IL, for Plaintiff–Appellant.

Michael P. Doyle (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before RIPPLE, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Sheldon Debs brought this action against Northeastern Illinois University ("Northeastern") and the Board of Governors of State Colleges and Universities alleging that the defendants discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and that defendants engaged in retaliatory conduct after he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in violation of 42 U.S.C. § 2000e–3. The district court granted the defendants' summary judgment motion. Debs appeals; we affirm the decision of the district court.

## I. HISTORY

We recite the facts here essentially as the district court stated them in *Debs v. Northeastern Ill. Univ.*, No. 96 C 3494, 1997 WL 610334 (N.D.Ill. Sept. 29, 1997). Northeastern employed Debs as the chief operating engineer in the heating plant from 1988 until his demotion and transfer in 1995. During the relevant time period Debs was 55 years old and had the most seniority among the employees in the heating plant.

On April 27, 1994 some of the subordinate employees in the heating plant filed a formal grievance against Debs and his assistant chief engineer, Steve Mack. The grievance alleged that Debs and Mack had physically and verbally harassed subordinate employees and had required these employees to work under dangerous conditions. The grievance sought the immediate removal of Debs and Mack from their respective positions, purportedly for the benefit and safety of the student body, faculty, and staff.

In July 1994, the Board of Governors Universities System Office and the administration at Northeastern authorized Robert J. Ruiz & Associates to commence an investigation of several allegations of improper conduct involving the management and staff of the heating plant. The investigation focused on alleged irregularities in the promotion of an employee from fireman to engineer, the alleged copying of a Civil Service System examination for the position of plant operating engineer, and the allegation by a plant fireman that disciplinary actions against him were retaliatory. Catherine Taylor, the investigator, summarized the results of this investigation in an August 1994 report ("Taylor report"). Taylor concluded that Debs' employment relationship with several of his subordinates was in shambles as a result of both active and passive negative activity and leadership by Debs. Taylor opined that Debs was directly responsible for the situation and therefore was unfit to continue effectively as head of the heating plant unit. Taylor recommended that Northeastern relieve Debs and Mack from any authority for the management of the heating plant.

David Dunn, counsel for Northeastern, advised Northeastern concerning Debs' discipline. Dunn reviewed the Taylor report and also conducted his own investigation into the allegations. Dunn recommended that Northeastern discharge Debs. Based on his experience with University Civil Service disciplinary proceedings, Dunn recommended that the charges be limited in scope and not include all of the allegations levied against Debs. Northeastern accepted Dunn's recommendation to limit the scope of the charges for discharge and instructed him to prepare the charges accordingly. Thus, some of the original allegations against Debs were wholly omitted from the discharge action.

The first step in Northeastern's process of discharging an employee is serving the employee with a notice, after which the employee is allowed to present evidence in an attempt to reach reconciliation before charges are filed. On August 18, 1994, Gloria Carter, Director of Personnel at Northeastern, served Debs with a Notice of Intent to Initiate Charges for Discharge. As alleged by the Notice, Northeastern sought Debs' discharge because he had assisted his brother-in-law, James Murphy, in obtaining a promotion by falsely representing Murphy's job qualifications, later attempted to cover up his dishonesty to appear as a mistake, and failed to disclose or falsified facts known to him regarding this incident thereby hindering Northeastern's investigation. Debs, Debs' attorney, and Carter met on August 23, 1994. At this meeting Debs' attorney stated that Debs would file a charge of discrimination if Northeastern discharged him.

The State University Civil Service System Merit Board ("Merit Board") rejected the charges for discharge against Debs. Following this rejection, the Board of Governors and Northeastern consulted with Dunn to determine whether they could pursue further disciplinary action. Dunn subsequently sent a letter to Debs' counsel summarizing the entirety of the evidence against Debs (not just those charges levied in the discharge hearing) and requesting that Debs consider a voluntary resignation. The letter cited twenty-seven incidents of alleged misconduct.

In the interim, several other employees implicated in the Taylor report, including Steve Mack and James Murphy, accepted Northeastern's invitation to resign in lieu of defending charges of discharge. Debs, however, refused to resign, and on March 3, 1995, Northeastern served him with a Notice of Demotion. To support the demotion proceeding against Debs, Dunn used some of the evidence that he had originally recommended omitting from the discharge proceeding. The Notice stated that, due to a series of incidents occurring in 1993 through 1994, the administration at Northeastern had lost confidence in Debs' integrity as an employee and his ability to supervise his employees effectively. The Notice cited that Debs had engaged in a course of abusive conduct toward several of his subordinates which warranted his demotion. It also advised Debs that many of the incidents giving rise to the demotion charge had been described more particularly in the letter to Debs' counsel.

Debs appealed his demotion to the Merit Board, but the Merit Board upheld the demotion in a ruling dated September 19, 1995. The Merit Board found that the record sufficiently supported Northeastern's charges against Debs and established just cause for demotion. The Merit Board concluded that:

[d]uring 1993 and 1994, [Debs] was continuously and constantly guilty of: (a) hostile and abusive conduct toward employer and other employees; (b) failure to demonstrate truth and veracity; (c) oppressive management conduct; poor judgment; unprofessional, abusive, and harassing conduct toward Employer, co-workers, and particularly his subordinates; (d) failure to cooperate or take reasonable actions to address the constant and recurring employee problems that adversely affected the success of his supervisory responsibilities and efforts.

The Merit Board thus ordered that Debs be demoted effective March 3, 1995 from chief operating engineer at the heating plant to operating engineer at the Center for Inner City Studies ("the Center"). Debs contends that this transfer was in violation of Northeastern's policy which requires an employee's consent prior to any transfer. The Center is located in a high crime area fifty miles from Debs' residence, and Northeastern assigned Debs to the late shift which ended at 11:00 p.m.

After the Merit Board rejected the discharge charges, but before Northeastern initiated the demotion procedures, Debs filed a claim of age discrimination with the EEOC. Following the issuance of his right to sue letter on March 15, 1996, Debs filed a complaint in district court alleging that his attempted termination and eventual demotion were the result of age discrimination and in retaliation for filing the EEOC charge.

In support of his claim for age discrimination, Debs alleges that his supervisor, Joe Kish, asked him on several occasions prior to

the disciplinary proceedings when he thought he was going to retire. Debs also alleges that Kish made statements to him about how Debs was too old to continue working in the heating plant. These statements represent the totality of Debs' evidence regarding age animus.

## II. ANALYSIS

### A. *Standard of Review*

We review a district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. *Northeastern's Claim that the District Court Lacks Subject Matter Jurisdiction Over Debs' ADEA Claim*

Northeastern asserts that the district court lacked subject matter jurisdiction over Debs' ADEA claim because Congress acted unconstitutionally in its attempt to abrogate the states' sovereign immunity in enacting the ADEA. According to Northeastern's argument, the ADEA is not a valid exercise of Congress's enforcement powers under sec-

tion 5 of the Fourteenth Amendment; thus the Eleventh Amendment bars suits brought by citizens against Northeastern.

We considered and rejected this argument in *Goshtasby v. Board of Trustees of the Univ. of Ill.*, 141 F.3d 761 (7th Cir.1998). In *Goshtasby*, after a thorough analysis of both Supreme Court precedent and precedent from our Circuit, we concluded that the ADEA was a proper exercise of Congress's § 5 enforcement power under the Fourteenth Amendment and that Congress had appropriately abrogated states' immunity to suit. The intervening and contrary decision from the Eleventh Circuit, *Kimel v. Florida Dept. of Corrections*, 139 F.3d 1426 (11th Cir.1998), has not given us reason to overrule *Goshtasby*. *See Mid–America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1364 (7th Cir.1996) (stating that we require compelling reasons to overturn our Circuit's precedent); *Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir.1990) (We give considerable weight to our own decisions "unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." (quotations omitted)). We reaffirm our holding in *Goshtasby* that the ADEA is a proper exercise of Congress's § 5 enforcement power under the Fourteenth Amendment, and thus we find Northeastern is not immune from suit by virtue of the Eleventh Amendment.

### C. *Debs' ADEA Claim*

Debs alleges that Northeastern attempted to terminate his employment and pursued demotion procedures because of his age in violation of the ADEA. The ADEA prohibits employers from engaging in discrimination with respect to compensation, terms, conditions, or privileges of employment "because of [an] individual's age." 29 U.S.C. § 623(a)(1). To succeed in an ADEA claim, a plaintiff must establish that he would not have been terminated "but for" his employer's intentional age-based discrimination. *See Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir.1992).

■ A plaintiff may prove age discrimination in two ways. "She may try to meet her burden head on by presenting direct or circumstantial evidence that age was the determining factor in her discharge. Or, as is more common, she may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), ... and later adapted to age discrimination claims under the ADEA." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir.1992) (quoting *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir.1988)).

■ Debs does not avail himself of the direct method of proof. Instead, he relies on the burden-shifting method to establish that he was terminated on the basis of his age. In order to prevail under the burden-shifting approach, a plaintiff must initially establish a prima facie case of discrimination. "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion....'" *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (quoting *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (emphasis in O'Connor removed). To establish such a case under the ADEA, a plaintiff must show (1) he was in the protected age group of 40 or older, (2) he was performing his job satisfactorily, (3) he suffered adverse employment action, and (4) substantially younger, similarly-situated employees were treated more favorably.[1] *See id.* 116 S.Ct. at 1310; *Maier v. Lucent Tech.*, 120 F.3d 730, 734 (7th Cir.1997); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996).

■ Once the plaintiff establishes this prima facie case, there is a presumption of discrimination that obligates the employer to produce a legitimate nondiscriminatory reason for its decision. *See Anderson v. Baxter*

*Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). If the employer meets this burden of production, it rebuts this presumption of discrimination, *see Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir.1994), shifting the burden back to the employee to show that the employer's stated reasons for its action are pretextual. *See Denisi*, 99 F.3d at 864.

■ A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993). Where defendants have proffered more than one reason for the dismissal, plaintiff must address *all* the reasons suggested by the defendants. *See Wolf v. Buss America, Inc.*, 77 F.3d 914, 923 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996).

■ Despite these shifting burdens of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the plaintiff is unable to meet this burden, his claim fails. *See Sarsha*, 3 F.3d at 1039.

■ Northeastern does not challenge whether Debs made out a prima facie case of age discrimination. Instead, it argues that it gave legitimate nondiscriminatory reasons for the termination and demotion procedures and that Debs has failed to prove that those reasons are a pretext for age discrimination. Debs also fights the battle on these grounds. We will therefore assume that Debs satisfied the requirements for a prima facie case and that Northeastern has articulated legitimate

---

**1.** This Circuit has employed various formulations of the fourth element, "largely as a result of 'the different types of age discrimination cases that arise.'" *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 843 n. 6 (7th Cir.1996) (quoting *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324,

1331 (7th Cir.1995)). Because we resolve this case on the basis of pretext and assume satisfaction of the prima facie case, we have no reason to examine "the various permutations and requirements associated with the fourth and final element." *Id.*

nondiscriminatory reasons for the termination and demotion procedures and proceed to the question of whether Debs has succeeded in showing that the reasons Northeastern proffered are pretextual. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) ("[T]he prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination.").

Northeastern presented two legitimate nondiscriminatory reasons for the disciplinary actions against Debs, both of which stem from the Taylor report: first, Debs misrepresented Murphy's start date in a recommendation letter, and second, Debs was the subject of significant and substantial employee grievances. Debs attacks the credibility of these reasons by arguing first, that the misrepresentation as to Murphy's start date was unintentional and had no impact on Murphy's eligibility for the position he was seeking, and second, that Northeastern had reason to question the veracity and motives of the subordinate employees who filed the grievances against him. On this latter point, Debs primarily focuses his attack on Joseph Benning, an employee who Debs claims had lied to Northeastern supervisors and managers numerous times in the past.

While Debs heroically struggles to cast doubt on Northeastern's motives in pursuing disciplinary action against him, he runs into two significant hurdles. First, Northeastern acted on the recommendations of an independent investigator. The investigator interviewed the relevant actors and concluded in regard to both the Murphy incident and the grievance that sufficient evidence existed to justify removing Debs from his position and asking him to resign. Taylor reached these conclusions with full knowledge of the circumstances surrounding Murphy's examination as well as with an understanding that

Benning, the primary grievant against Debs, had exhibited behavior suggesting he may not be completely trustworthy. Notwithstanding these factors, Taylor concluded that Debs in fact had engaged in misconduct significant enough to warrant disciplinary action. Additionally, Dunn reviewed the Taylor report and, based on the report and his own investigation, determined that Debs deserved some adverse employment action. Second, at least in regard to Debs' ultimate demotion, the Merit Board reviewed Northeastern's decision and determined that Debs' demotion was adequately supported by the record.

We are reminded that Debs cannot prevail if Northeastern "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997); *see also Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997) (stating that "a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination"); *Wolf*, 77 F.3d at 919 (defining pretext as "more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action" (quotation omitted)). This Court has established that it "does not sit as a super-personnel department that re-examines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Instead, our task is to determine "whether the employer gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987). Given the independent investigation by Taylor as well as the independent review by the Merit Board, we find unpersuasive Debs' attacks on the substance and reasonableness of Northeastern's reasons for pursuing disciplinary action against him.

Our decision is bolstered by the fact that Debs' only evidence that age animus motivated the adverse employment actions is Kish's remarks asking Debs when he thought he might retire, and "statements to the effect of [Debs] being too old to continue working at the Heating Plant." Debs Aff. para. 17. A supervisor asking about a pro-

jected retirement date does not give us reason to question Northeastern's reliance on the independent investigator's report. As to Debs' assertion that Kish made comments "to the effect" that he was too old to continue working, this allegation reflects only Debs' subjective understanding of Kish's remarks. An employee's subjective understanding of a comment cannot alone support an inference of age animus. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998). Without evidence of the comment itself, instead of merely Debs' interpretation of it, we cannot find sufficient evidence to establish pretext. We therefore conclude that Debs has not met his burden, and the district court properly granted Northeastern's motion for summary judgment on the ADEA claim.

### D. *Debs' Retaliation Claim*

 Debs also alleges that his demotion was in retaliation for his filing a charge of discrimination with the EEOC in violation of 42 U.S.C. § 2000e–3. To demonstrate a prima facie case of retaliation, Debs must show that "1) [he] engaged in statutorily protected activity; 2) he suffered an adverse action; and 3) there is a causal link between the protected activity and the adverse action." *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir.1997). While we have serious doubts as to whether Debs could make the requisite showing of a causal nexus, we will assume Debs has made out a prima facie case. As in the ADEA context, this production shifts the burden to the employer to articulate a legitimate nondiscriminatory reason for the adverse action. Northeastern has done so, *see supra.* Thus once again the battle is fought on the ground of pretext.

Debs offers no new evidence that the reasons Northeastern gave are pretextual; instead he relies on the timing of the adverse actions to suggest that Northeastern must have been retaliating against him for filing the EEOC charge. It is true that Northeastern initiated the *demotion* proceedings after Debs filed his charge, but the adverse

employment actions against Debs had begun long before the EEOC filing. We have no reason to believe that the termination proceedings were legitimate but the subsequent demotion proceedings were not. Although the action proceeded in two stages, they were both part of a single effort to discipline Debs for his misconduct. We therefore find no evidence to suggest that Northeastern's proffered reasons are pretextual, and we hold that the district court also properly granted Northeastern summary judgment on Debs' retaliation claim.

For the forgoing reasons, we AFFIRM the decision of the district court.