Kevin L. SCHMIDT, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.

No. 97–3146.

United States District Court, C.D. Illinois, Springfield Division.

Sept. 11, 1998.

Lance T. Jones, Springfield, IL, for plaintiff.

Elizabeth L. Collins, Springfield, IL, for defendant.

## OPINION

MILLS, District Judge.

My objection is to an increasingly popular notion that, had it been in vogue 2000 years ago, might have landed the "goodman" of the parable in court: the notion that every difference in treatment is an injustice, and every injustice deserves redress in a court of law.

> William Raspberry, "Discrimination? So?"
>
> *Washington Post*, April 4, 1986. p. A 19.

Not every adverse employment decision gives rise to a federal discrimination claim.

## I. BACKGROUND

The United States Postal Service employs "Transitional Employees" on a yearly basis at the Springfield, Illinois, Post Office to supplement its regular work force and to fill the gaps in positions pending automation, in positions with residual vacancies, and in positions created by attrition. Transitional employees are scheduled to, eventually, be phased out as automation becomes operational. Because unscheduled absences disrupt its mail distribution operations, the Postal Service requires transitional employees to maintain regular attendance, to minimize their sick time as much as possible, and to avoid absences on weekends and holidays. The Postal Service frowns upon absences by transitional employees on days following holidays and on weekends because those days are reserved as off days for regular employees and because there is a larger mail volume on those days. The Postal Service reserves the right to terminate any transitional employee without just cause.

The Postal Service employed Plaintiff, Kevin L. Schmidt, as a transitional employee at the Springfield, Illinois, Post Office in April 1994, for a one year term, and it reappointed him in April 1995, for another 359 day period. However, on September 20, 1995, the Postal Service terminated Schmidt *via* a letter of termination. The termination letter informed Schmidt that he was being terminated for "Unscheduled Absences: Failure to Maintain a Regular Work Schedule." The letter was signed by David Poppenhouse and Anthony Howard on behalf of Mary Kight.[1]

Following his discharge, Schmidt contacted a union representative and an attorney and filed a grievance alleging that he had been wrongfully terminated. His grievance was rejected. In addition, Schmidt filed a complaint with the United States Postal Service's Equal Employment Opportunity Office ("EEO") alleging discrimination based upon his sex. Schmidt asserted that the true reason that the Postal Service terminated him was because he had failed to pass his "scheme test."[2] On March 27, 1997, the EEO issued a final agency decision finding that Schmidt had failed to establish a *prima facie* case of gender discrimination because he had failed to establish that he was treated less favorably than employees outside of his protected group.

Accordingly, on May 2, 1997, Schmidt filed the instant case. Herein, Schmidt alleges that the United States Postal Service fired him because of his sex and, thereby, discriminated against him. Schmidt argues that the Postal Service's reason for his discharge, *i.e.,* his failure to maintain a regular work schedule, was a mere pretext for unlawful discrimination. Schmidt claims that the true reason he was fired was because he failed to pass the scheme test. Schmidt asserts that the

---

1. Poppenhouse and Kight were the two supervisory Postal employees who were involved in the decision to terminate Schmidt.

2. The scheme test measured an employee's skill, knowledge, and ability to key the mail for a given zip code, *i.e.,* a scheme, at a controlled rate of speed on the letter sorting machine in order to direct the mail to the correct carrier. Schmidt's scheme was for the zip code 62704.

reason he failed to pass the scheme test was because he was denied adequate "case time" to hone his skill and accuracy on the letter sorting machine. Schmidt asserts that rather than being allowed to practice on the letter sorting machine, the Postal Service assigned male employees to areas which required heavy lifting. On the other hand, female employees were assigned to the letter sorting machine and, thus, received more case time and training than male employees.

In addition, Schmidt alleges that he was treated less favorably than female employees in the conditions of employment including attendance, counseling, discipline, and training. Specifically, Schmidt argues that similarly situated female employees were allowed more unscheduled absences than he was and that female employees retained their positions in spite of their absenteeism.

The United States Postal Service denies that it discriminated against Schmidt because of his gender. The Postal Service asserts that the only reason it terminated Schmidt was due to his inability to maintain a regular work schedule.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–16(a) provides in relevant part:

All personnel actions affecting employees or applicants for employment ... in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex or national origin.

A plaintiff may support a Title VII claim of discrimination either by offering direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or by the burden shifting method articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Schmidt has acknowledged that he has no direct evidence of discrimination, and therefore, he relies upon the *McDonnell Douglas* burden shifting method to support his claim.

The United States Court of Appeals for the Seventh Circuit has explained the *McDonnell Douglas* burden shifting method as being a three step inquiry:

First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging the plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Finally, "the plaintiff must then have an opportunity to prove by a pre-

ponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *see also Anderson,* 13 F.3d at 1122–24 (discussing pretext prong of *McDonnell Douglas* ). Throughout, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. A goal of this burden-shifting approach is "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95.

*Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 302–03 (7th Cir.1996), quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 393, 1998 WL 519587, *4 (7th Cir.1998). Thus, the Court will employ this frame work in analyzing Schmidt's claim.

### A. Prime Facie Case

"To make out a prima facie case of sex discrimination under Title VII, [Schmidt] must show that [he was a] (1) member[ ] of a protected class, (2) qualified for the[ ] position[ ], (3) discharged, and (4) that others, similarly situated but not of the protected class, were treated more favorably." *Morrow v. Wal–Mart Stores, Inc.,* 152 F.3d 559, 560 (7th Cir.1998); *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996); *Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 515 (7th Cir.1996). The Postal Service argues that Schmidt has failed to establish a *prima facie* case of sex discrimination. Specifically, the Postal Service asserts that Schmidt has failed to establish that his performance met its legitimate expectations and that he has failed to establish that similarly situated female transitional employees were treated more favorably than he was.

■ The Court agrees. "Obviously, an employee who does not come to work cannot perform the essential functions of his job."

*Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1003 (7th Cir.1998) (ADA claim); *Runnebaum v. NationsBank of Maryland, N.A.,* 123 F.3d 156, 174–75 (4th Cir.1997) (ADA claim); *Fox v. Southwestern Bell Tel. Co.,* 839 F.Supp. 678, 679 (E.D.Mo.1993) (gender discrimination claim). From January 1995, until September 15, 1995, Schmidt had seven, eight hour days of unscheduled absences. Not only did Schmidt accumulate unscheduled absences, he was absent on the most critical days, *i.e.,* those following holidays and on weekends. Four of the eight hour days of Schmidt's unscheduled absences occurred on days following holidays or on weekends. As the Court noted above, it was critical for an efficient mail distribution operation that the Postal Service's transitional employees be at work on the days following holidays and weekends because its regular employees were off on those days and because there was a larger mail volume on those days.

The fact that Schmidt was unaware or was never informed that it was more serious for him to miss a weekend or a day following a holiday is irrelevant. Schmidt knew that he, as a transitional employee, was expected (1) to maintain his assigned work schedule, (2) to make every effort to avoid unscheduled absences, (3) to maintain regular attendance, and (4) to minimize sick time as much as possible. In addition, Schmidt was aware that the unscheduled absences of transitional employees disrupted the mail distribution operations, and he knew that transitional employees were not scheduled to be off on weekends and days following holidays. Thus, it is clear that Schmidt's absenteeism prohibited him from meeting the Postal Service's legitimate expectations.

■ Likewise, Schmidt has failed to establish that female transitional employees were treated more favorably than he was. First, the only female transitional employee with an attendance record worse than his (*i.e.,* Barbara Miller) was also terminated. Second, Schmidt's alleged lack of case time is irrelevant because Kight did not monitor Schmidt's training progress and recommended that he be terminated prior to his failing the scheme test. Moreover, other male transitional employees passed their

scheme tests with less case time than was afforded to Schmidt and to female transitional employees. Thus the Court finds that Schmidt has failed to establish a *prima facie* case of sex discrimination.[3]

### B. *Legitimate, Non–Discriminatory Reason*

Generally, when a plaintiff has failed to establish a *prima facie* case of sex discrimination, no further analysis under *McDonnell Douglas* is necessary. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997); *Villa v. City of Chicago*, 924 F.2d 629, 631 (7th Cir.1991). However, the Court is cognizant that "[t]he burden of establishing a prima face case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089.

Although the Court is not persuaded by such an argument, one could be made, nonetheless, that Schmidt has established a *prima facie* case. Specifically, an argument could be made that Schmidt has established the second prong of his *prima facie* case because he met his employer's legitimate expectations other than his attendance, and Schmidt has satisfied the fourth prong because, regardless of the impact of Kight's decision, female employees received more case time than Schmidt. In addition, female transitional employees received more favorable treatment with regard to their unscheduled absences. Because, in the end, it matters little, the Court will assume, *arguendo*, that Schmidt has established a *prima facie* case and will continue to apply the burden shifting analysis to his claim.

Because Schmidt has, *arguendo*, established a *prima facie* case, the Postal Service is presumed to have unlawfully discriminated against him. *Sample v. Aldi, Inc.*, 61 F.3d 544, 547 (7th Cir.1995). Therefore, the Postal Service has the burden of producing "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.*, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The Postal Service, through the affidavits of Kight and Poppenhouse, have articulated a legitimate, nondiscriminatory reason for terminating Schmidt's employment, that is, his unscheduled absences and his failure to maintain a regular work schedule. Schmidt admits that the Postal Service has met its burden of producing a legitimate, nondiscriminatory reason.

### C. *Pretext*

■ Because the Postal Service has met its burden of production, the presumption of discrimination drops from the case, and Schmidt must produce evidence which creates a genuine issue of material fact regarding whether the Postal Service's reason for terminating him was a mere pretext. *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir.1998); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997). The Seventh Circuit has defined pretext as a lie or a phony reason. *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 672, 1998 WL 456253, *4 (7th Cir.1998); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Although Schmidt cannot offer any direct evidence of pretext, he may establish it indirectly by proving either that " 'Defendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) . . . the reason stated was insufficient to warrant the [adverse job action].' " *Johnson v. City of Fort Wayne, Indiana*, 91 F.3d 922, 931 (7th Cir.1996), quoting *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994).

■ Schmidt has failed to prove any of these propositions. It is clear that the Postal Service's proffered reason (Schmidt's absenteeism) had a basis in fact. It is also clear that an employee's failure to attend work on his designated days and time is sufficient to warrant termination.

Schmidt, however, argues that summary judgment is precluded because he has estab-

---

**3.** As previously noted by the Court, the United States Postal Service's Equal Employment Opportunity Office also found that Schmidt had failed to establish a *prima facie* case of gender discrimination.

lished that the Postal Service's reason was not the "real" reason for firing him. Schmidt asserts that the true reason for his termination was because he had failed his scheme test; he failed his scheme test, he claims, because the Postal Service denied him sufficient case time, although it provided adequate case time to female transitional employees.

However, there is no evidence that the Postal Service conditioned his employment upon his passing the scheme test. Although he received his termination letter the same day that he failed his scheme test, Kight testified in her affidavit that she did not monitor Schmidt's training progress and had recommended to Poppenhouse on September 15, 1995, that Schmidt be terminated. Kight's recommendation, therefore, occurred five days prior to Schmidt's failing his scheme test.

█ Furthermore, Schmidt has failed to produce any evidence, direct or indirect, that the Postal Service fired him or treated him unfavorably because of his gender. A disparate treatment claim based upon Title VII "focuses exclusively on the intent of the employer." *Morgan v. Harris Trust and Savings Bank of Chicago*, 867 F.2d 1023, 1027 (7th Cir.1989), quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 1002, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (Blackmun, J., concurring). As for the issue of absenteeism, Pat Davis, a male transitional employee, was not terminated even though he had three unscheduled absences. Likewise, regarding the issue of adequate case time, male transitional employees were able to pass their scheme test with less training and, possibly, with less case time than female employees. In short, Schmidt has failed to show that the United States Postal Service treated either him or males as a group less favorably than it did female transitional employees, and he has failed to show that the Postal Service's reason for terminating him was pretextual.

In conclusion, the Court notes two other factors which weigh in favor of granting summary judgment for the Postal Service.

First, transitional employees could be fired without just cause. Thus, if the Postal Service conditioned Schmidt's job upon his passing the scheme test, and if the Postal Service failed to provide Schmidt with adequate training and/or practice time, it was within its right to do so as long as it did not discriminate based upon gender. While the Court may not believe that it is a good business practice to hire an employee and then fail to adequately train him, the Court's opinion is irrelevant because "it 'does not sit as a super-personnel department that reexamines an entity's business decisions.'" *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 396, 1998 WL 452343, *6 (7th Cir.1998), quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). "Instead, our task is to determine 'whether the employer gave an honest explanation of its behavior.'" *Debs*, 153 F.3d at 396, 1998 WL 452343, *6, quoting *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 560 (7th Cir.1987). Here, the Court believes that the Postal Service gave an honest, nondiscriminatory explanation for terminating Schmidt and believes that no reasonable jury could draw any other inference or conclusion from the facts presented.

Second, the sequence of events in this case weigh in favor of granting the Postal Service's motion for summary judgment. As the Court stated above, the Postal Service employed its transitional employees at the Springfield, Illinois, Post Office on a yearly basis. The Postal Service "reappointed" Schmidt to a 359 day term in April 1995, and terminated him in September 1995. It seems incredible to the Court that although the Postal Service could have simply refused to reappoint him in April,[4] it nevertheless did so, only to intentionally discriminate against him because of his gender five months later.

Accordingly, the Court finds that there are no genuine issues of material fact to be determined by the trier of fact and that Defendant is entitled to judgment as a matter of law.

*Ergo*, Defendant's Motion for Summary Judgment is ALLOWED. Accordingly, pursuant to Federal Rule of Civil Procedure 56,

---

4. Schmidt admits that the Postal Service was not required to reappoint him in April 1995.

summary judgment is hereby entered in favor of Defendant and against Plaintiff.