**Monroe CAMPBELL, Plaintiff,**

v.

**DOMINICK'S FINER FOODS, INC., Defendant.**

No. 98 C 3434.

United States District Court,
N.D. Illinois,
Eastern Division.

March 8, 2000.

---

Chelsey R. Parkman, Parkman & Owens, for Monroe Campbell, Chicago, IL, for plaintiff.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff Monroe Campbell ("Campbell") has brought this action against Defendant Dominick's Finer Foods, Inc. ("Dominick's") for racial discrimination, racial harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* and 42 U.S.C. § 1981. Before the court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d).

For the reasons set forth below, the Motion is granted.

## FACTUAL BACKGROUND[1]

Dominick's operates a retail grocery chain in the greater Chicagoland area. Plaintiff, an African–American, was first employed by Dominick's on November 11, 1989 as a part-time Utility Clerk, an entry level position. On April 8, 1990, Plaintiff was promoted to Stock Clerk. Approximately two years thereafter, Plaintiff was promoted again to the position of Produce Clerk. Plaintiff held his position as a Produce Clerk until December 4, 1996, at which time he was terminated.

During his employment at Dominick's, Plaintiff was transferred to different stores six times per his request. He was disciplined in the form of verbal and written warnings and suspensions of varying lengths more than three dozen times during the course of his employment at Dominick's.

While working at Dominick's Store # 75[2], Plaintiff was disciplined at least 19 times for multiple violations of company rules including the following: (1) a written warning after a customer complained that he was cursing in front of the store; (2) a written warning for not being in his work area (when questioned by his supervisor, Plaintiff cursed under his breath); (3) a written warning after he refused to retrieve shopping carts from the parking lot; (4) a written warning after a manager told him to stop arguing with a white co-worker (Plaintiff told the manager to "quit fucking screaming at me"); (5) a one-week suspension for fighting with a black co-worker; and (6) a one-week suspension for threatening to damage the Produce Manager's car following an argument over the work schedule.

While working at Dominick's Stores 128, 53 and 123 from mid–1994 until approxi-

---

1. The court has taken these facts from Defendant's 12(M) Statement and Plaintiff's 12(N) Statement.

2. Plaintiff worked at Store # 75 from his hire until approximately mid–1994 with the exception of a brief time period.

mately October 1995, Plaintiff was disciplined at least eight times, including suspensions for excessive and/or unauthorized absences. From October 1995 until October 10, 1996, Plaintiff worked at Store # 33, and he was disciplined at least ten times for such actions as acting rudely to customers, excessive absences, obtaining unauthorized overtime by punching in early and refusing to punch out for his break.

On October 10, 1996, the manager of Store # 433, Greg Kasperski, gave Plaintiff a written discipline form while Plaintiff's co-workers were present. Plaintiff objected and then, according to Plaintiff, "one thing led to another" and Plaintiff told Kasperski, "[y]ou're a fag. You must be gay. I'm not a gay man. I don't play that faggot shit." Kasperski told Plaintiff he was being insubordinate and sent him home. (*See* Pl.Dep. ¶¶ 197–203; Pl.Dep. Exs. 55–56; Kasperski Aff. ¶¶ 3–4). Following these events, Plaintiff was sent home and placed on suspension pending further investigation. Director of Human Resources Dewayne Howard investigated this matter and decided to transfer Plaintiff to Store # 68. Howard told Plaintiff to report to work at Store # 68 on Monday October 21, 1996, but later phoned Plaintiff, telling him to report to work at Store # 68 on Saturday October 19, 1996. Plaintiff did not report to work on October 19 because he was upset that Howard changed his start date. Subsequently, during the course of his employment at Store # 68, Plaintiff was given a verbal warning for reporting to work 25 minutes late and a one-day suspension for refusing to do a temperature check. On November 13, 1996, Plaintiff was told to go home after telling the manager of Store # 68, Joe Pardo, to get out of his face. Following the incident with Pardo, Plaintiff failed to report to work for the next five days he was scheduled.

In approximately mid-November 1996, Plaintiff, still working at Store # 68, used the telephone in a manager's office to place a personal call. Plaintiff had permission to make this call. While Plaintiff was on the telephone, Meat Department Manager Vince Gallagher came into the office to use the telephone. On November 27, 1996, Plaintiff used the same telephone to place another personal call, again allegedly with managerial permission. While Plaintiff was on the telephone, Vince Gallagher again came into the office to use the telephone to place an order for turkeys for Thanksgiving. When Gallagher saw that Plaintiff was on the telephone, he became angered. Gallagher told Plaintiff he was "tired of this shit" and forcefully tried to hang up the telephone. (*See,* Pl.Dep. ¶¶ 253–61).

Approximately two hours later, Plaintiff nodded "hello" to Fish Department Manager Tim Cashew who was speaking with Gallagher. Gallagher allegedly said to Plaintiff, "[w]hat the hell are You looking at?" Plaintiff responded, "I don't know who you think you're messing with. I'll beat your ass if you think you're messing with me. I don't care if you're a manager, I'll kick your fucking ass." Gallagher then called Plaintiff a "troublemaker" to which Plaintiff replied, "go fuck yourself." (*See* Pl.Dep. ¶¶ 263–64). Plaintiff was subsequently called into Pardo's office and, according to Plaintiff, Pardo and Co–Store Manager Bob Carlson told Plaintiff that he was being terminated. Human Resources Director Dewayne Howard subsequently reviewed the statements and other facts and recommended that Plaintiff be terminated. On December 4, 1996, Pardo advised Plaintiff that he was terminated for threatening Gallagher on November 27, 1996.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary Judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 964 (7th Cir.1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

" 'Summary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent.' " *Cowan v. Glenbrook Security Services, Inc.*, 1996 WL 596509, *1 (N.D.Ill.1996) (*quoting Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985)) *citing Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th Cir.1980). On the other hand, the Seventh Circuit court in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568,

1573 (7th Cir.1989) explained that summary judgment can be appropriate in employment discrimination cases:

> ... realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not exist in American law, [has] led the courts to take a critical look at efforts to withstand ... summary judgment. A district court judge faced with such a motion must decide ... whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

## II. RACE DISCRIMINATION CLAIM STANDARD

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). The complainant in a Title VII employment discrimination case based on race, has the initial burden of establishing a prima facie case of racial discrimination.

To prevail on a claim of racial discrimination, a plaintiff may present direct evidence of discrimination or he may resort to the indirect, burden shifting method first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As Plaintiff did not present any direct evidence, his discrimination case is governed by the *McDonnell Douglas* indirect, burden shifting approach.

Under this familiar *McDonnell Douglas* burden shifting framework, a plaintiff establishes a prima facie case of racial discrimination by showing: (1) he

was a member of a protected class [3]; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action (*e.g.*, termination) [4]; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1035 (7th Cir.1999); *See Bragg v. Navistar Int'l Transp. Corp.,* 164 F.3d 373, 376 (7th Cir.1998). In order to defeat summary judgment, a plaintiff must only show that there is a genuine issue of material fact regarding the aforementioned elements of the prima facie case. *Stalter v. Wal–Mart Stores, Inc.,* 195 F.3d 285, 289 (7th Cir. 1999).

The United States Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) explained that once the plaintiff has met his initial burden of establishing the prima facie case, the employer is obliged to "produce a legitimate, non-discriminatory reason for its decision." *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir.1999). If the employer can do so, the burden shifts back to the employee "to present evidence that [the employer's] proffered reason is pretextual." *Id.* at 806.

## A. Plaintiff Failed to Meet Defendant's Legitimate Performance Expectations

■ Defendant contends that as to each of Plaintiff's discrimination claims, Plaintiff cannot show that he was meeting Defendant's legitimate performance expectations, and therefore, Plaintiff cannot meet his burden of establishing a *prima facie* case of racial discrimination. This court agrees.

For example, with respect to the issue of absenteeism: during the course of Plaintiff's employment, he was cited for excessive or unauthorized absence from work, or tardiness, 22 times. He was disciplined for such absenteeism in the form of verbal warnings, written warnings and a number of suspensions, ranging from one day up to as many as five days. Plaintiff was warned that if his absenteeism continued, he would be terminated. (*See* Pl.Dep. Exs.) Plaintiff has not disputed that he was absent on each of the numerous days about which he was asked during his deposition, nor has he disputed that he was disciplined for such absenteeism. Rather, Plaintiff argues that the warnings he received for absenteeism were arbitrary, such that "an employee that committed similar infractions ... was not disciplined." (*See* Pl.Resp. at 6.)

If a plaintiff cannot establish that he was meeting his employer's legitimate work expectations, then the inference that he would not have suffered adverse employment action but for his race is " 'so weak that the factfinder should not be allowed to speculate on the motive for [the adverse employment action].' " *Gibson v. AT&T Corp.,* 1998 WL 774687, * 5 (N.D.Ill.1998) (*quoting Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir.1997)). The Seventh Circuit has considered an employee's attendance record a relevant factor in resolving claims of employment discrimination under Title VII. *See Aguilar v. Aircraft Gear Corp.,* 1996 WL 599449, at *6 (N.D.Ill.1996) (Plaintiff was not performing her job satisfactorily at the time of her scheduled pay increase, as evidenced by her poor to fair attendance record.) *See also, Cowan v. Glenbrook Security Services, Inc.,* 123 F.3d 438, 445 (7th Cir.1997) (Plaintiff, who was terminated for tardiness, was not meeting employer's legitimate performance expectations where many instances of tardiness were admitted to by plaintiff); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1115 (7th Cir.1992) ("It almost goes without saying that an employer has a legitimate interest in in-

---

**3.** It is undisputed that Plaintiff, an African–American, is a member of a protected class.

**4.** It is undisputed that Plaintiff suffered adverse employment actions herein.

suring that each employee's work continues at a steady pace.... Reliability and promptness are important considerations in maintaining a work force."); *Nowak v. St. Rita High School,* 142 F.3d 999, 1003 (7th Cir.1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job."). It is clear that Campbell's absenteeism, in and of itself, prevented him from meeting Dominick's legitimate performance expectations as to Plaintiff's claims related to such absenteeism discipline.

Similarly, the court has reviewed each of Plaintiff's other race discrimination claims. As to each of these claim areas, the record clearly discloses that Plaintiff has not shown that he was meeting Defendant's legitimate performance expectations.

## B. Similarly Situated Employees

■ Generally, once the Plaintiff, as here, has failed to establish a *prima facie* case of race discrimination by not showing that he has met his employer's legitimate performance expectations, his cause falls under *McDonnell Douglas.* In any event, Plaintiff's claim falls on the wholly separate ground that he has not made a *prima facie* showing that similarly situated non–African–American employees were treated more favorably. To establish this element, Plaintiff must point to similarly situated non-African American employees who engaged in similar conduct but were neither disciplined nor terminated. "Such a comparison must 'demonstrate more than occasional leniency toward other employees who had engaged in conduct of a similar nature.'" *Gibson,* 1998 WL 774687 at *6 (*quoting Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 771 (7th Cir.1994)).

At his deposition, Plaintiff testified that a Hispanic employee named Merita or Vera was frequently absent and that this employee told Plaintiff that she was never disciplined. (Pl.Dep.173, 297, 302–03).

However, as Defendant correctly points out, Plaintiff never accurately identified this person nor did he offer evidence that she, like Plaintiff, was absent without excuse or that, if she was, she was not disciplined. Clearly, Plaintiff cannot establish the "similarly situated" element by simply referring to an unidentified Hispanic employee whose attendance records is unknown. Plaintiff was absent or tardy nearly two dozen times. He has not offered any evidence as to how many times Merita/Vera was absent, and he is inappropriately relying on hearsay evidence in order to establish that an allegedly similarly situated employee was treated more favorably. The alleged statements made by Merita/Vera is not claimed to fall within any of the myriad of exceptions to the hearsay rule, and therefore, they are inadmissible in this summary judgment proceeding. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995); Fed.R.Evid. 802, 803, 804.

Also, Plaintiff's own wholly conclusory statements that non–African–Americans were not disciplined like him are equally unavailing. Absent evidence that these unidentified persons were similarly situated and engaged in materially similar misconduct, Plaintiff cannot survive summary judgment on this point.

Plaintiff compares himself too, to manager Gallagher, who was not disciplined for the November 26, 1996 events. However, Gallagher was a manager and not similarly situated to a subordinate, non-supervisory employee like Plaintiff.[5]

In sum, Plaintiff has failed to show that similarly situated non–African–American employees were treated more favorably. Because Plaintiff cannot establish the fourth element of his *prima facie* case, he cannot survive summary judgment.

---

5. Also, the record discloses a difference in conduct during the events on that date. For example, Plaintiff made an explicit threat to the manager. The manager made no such threat.

## C. Pretext

Even *arguendo* if Plaintiff had made the requisite prima facie showing as to the issues of meeting performance expectations and similarly situated employees, Defendant clearly prevails herein on the issue of pretext.

■ Defendant has produced legitimate, non-discriminatory reasons for its subject decisions. Pursuant to *McDonnell Douglas,* once the employer has produced a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to produce evidence that the employer's stated reason was pretextual. "The Seventh Circuit has defined pretext as a lie or a phony reason." *Schmidt v. Runyon,* 20 F.Supp.2d 1246, 1250 (C.D.Ill. 1998); *See Blackwell v. Cole Taylor Bank,* 152 F.3d 666, 672 (7th Cir.1998); *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). " 'The pretext inquiry focuses on the honesty—not the accuracy—of the employer's stated reason for the [adverse job action].' " *Gibson v. AT&T,* 1998 WL 774687 *8 (N.D.Ill.1998) (*quoting Tincher v. Wal–Mart Stores, Inc.,* 118 F.3d 1125, 1130 (7th Cir.1997)). "The fact that [an] employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304, 1310 (7th Cir.1997).

Plaintiff may meet his burden by providing direct evidence or indirect evidence of pretext. In this case, Plaintiff has not presented any direct evidence. Thus, he can only establish pretext indirectly by proving either that " 'Defendant's explanation (1) had no basis in fact, or (2) was not the 'real' reason, or (3) . . . the reason stated was insufficient to warrant the [adverse job action].' " *Johnson v. City of Fort Wayne, IN,* 91 F.3d 922, 931 (7th Cir.1996) (*quoting Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133 (7th Cir.1994)). The record, however, is devoid of ally evidence whatsoever to support Plaintiff's argument that the reasons Dominick's gave for any of the subject adverse job actions were pretextual. Hence, Plaintiff has not met his burden on the issue of pretext and cannot survive summary judgment on that issue.

## III. PLAINTIFF'S HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIM

■ Title VII of the Civil Rights Act of 1964 prohibits an employer from engaging in any form of racial harassment that creates a hostile or offensive work environment. *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 673 (7th Cir.1993); *Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Supreme Court, in *Meritor,* explained that " 'Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.' " *Rodgers,* 12 F.3d at 673 (*quoting Meritor,* 477 U.S. at 65, 106 S.Ct. 2399 (*citing Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972))). "A hostile environment claim require[s] the plaintiff to show that his work environment was so pervaded by racial harassment as to alter the terms and conditions of his employment." *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 767, 118 S.Ct. 2257, 2271, 141 L.Ed.2d 633 (1998). In order to determine whether a hostile work environment has been created, it is necessary to consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Adusumilli v. City of Chicago,* 164 F.3d 353, 361 (7th Cir.1998).

■ Plaintiff has failed to submit any evidence in support of his hostile work

environment claim. He claims that he was subjected to constant and harassing discipline that other employees were not subject to. However, the reason Plaintiff was disciplined appears to have had absolutely nothing to do with his race. Rather, from a review of the record, respectfully, such discipline appears warranted. Plaintiff was repeatedly absent from work, disrespectful to his superiors, he refused orders from his superiors, used profanity when speaking to his superiors and in front of customers, he obtained unauthorized overtime by improperly punching in and he threatened to harm his superior as well as to damage his manager's car. Plaintiff has admitted to committing each of the aforementioned acts.

Even assuming *arguendo* that the challenged conduct did amount to harassment, it is still not actionable, as there simply was nothing intrinsically or extrinsically racial about it. Plaintiff has not shown any racial component to Dominick's treatment of him. Also, Plaintiff falls to claim how any alleged hostile work environment affected him or the conditions of his employment other than Plaintiff's conclusory statement that an "abusive working atmosphere" was created. (*See* Pl.Resp. at 13.)

In short, Plaintiff simply has not shown that he was subject to racial harassment that was "sufficiently severe or pervasive so as to alter the conditions of [his] employment...." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 479–80 (7th Cir. 1996). Accordingly, the court grants summary judgment to Defendant on Plaintiff's racial harassment hostile work environment claim.

## IV. PLAINTIFF'S RETALIATION CLAIMS

■ Under Title VII, it is unlawful for an employer to "discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) he engaged in statutorily protected expression; (2) he suffered an adverse action by the employer; and (3) there was a causal link between the protected expression and the adverse action." *Johnson v. City of Fort Wayne, IN*, 91 F.3d 922, 938–39 (7th Cir.1996); *Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 479 (7th Cir.1995). "In order to demonstrate the 'causal link,' the plaintiff must demonstrate that the employer would not have taken the adverse action 'but for' the protected expression." *Id.*

■ Plaintiff in this case contends that he engaged in statutorily protected activity by reporting racial remarks he heard uttered to an African–American employee by a non–African–American manager. (*See* Pl.Resp. at 14.) This court disagrees. Plaintiff admitted in his deposition, that he was *called into* an investigative meeting after he overheard a white night crew manager call a co-worker a "monkey." It is undisputed that Plaintiff never mentioned the offensive remarks to Dominick's until he was called into this investigatory meeting and asked what he heard. Only then did Plaintiff relate the remark. But even then he did not oppose it or otherwise object to it. Plaintiff thus was not "opposing" an action taken by his employer, nor was he participating in a Title VII investigation, proceeding or hearing, as there was no charge or lawsuit relating to the subject offensive comment made to one of Plaintiff's co-workers. Accordingly, the conduct Plaintiff relies on does not constitute "statutorily protected activity" in accordance with Title VII. 42 U.S.C. § 2000e–3.

Even were it to be assumed *arguendo* that Plaintiff's actions were "statutorily protected," Plaintiff's retaliation claims still must fall because there has been no showing of a causal nexus between the investigative meeting report and the chal-

lenged adverse employment actions. As discussed *supra,* Plaintiff suffered adverse employment action because of misconduct to which he has already admitted. Moreover, there is no evidence that Mr. Gallagher and Mr. Pardo were aware of Plaintiff's alleged protected activity. Plaintiff argues without support that "everyone was aware of what happened" and "it is not unreasonable to believe that Pardo and Gallagher knew." (*See* Pl.Resp. at 15.) But Plaintiff's speculation and conjecture is insufficient to establish a causal connection or inference between his repeating the "monkey" comment and disciplinary actions that occurred months later at a different store. Further, as discussed *supra,* it is undisputed that Plaintiff was repeatedly disciplined for the same types of misconduct both before *and* after he related the subject offensive remark. No inference of a retaliatory motive can be shown from the record.

Finally and independently, as already discussed, Plaintiff has not shown that Dominick's reasons for any of the challenged disciplinary actions were pretextual. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

### CONCLUSION

In view of the foregoing, summary judgment is granted for the Defendant and the cause is dismissed with prejudice.